## BLODGETT & A. v. THE BERLIN MILLS CO.

In an action to recover for work and labor, the plaintiff claimed that, by the original contract of hiring, he was to work "so long, and so long only, as he chose." The defendants claimed that the hiring was for a specified time; and it appeared that the suit was commenced before the expiration of that time. *Held*, that evidence to show the extent of damage occasioned the defendants by the plaintiffs' leaving their employ before the expiration of the term of service claimed by them was properly excluded.

A breach or failure of performance by the employé of the original contract of hiring may be shown by the employer in defence, *pro tanto*, to an action against him for the wages, under the general issue.

ASSUMPSIT, by Milton Blodgett and Frank Blodgett, as partners, against The Berlin Mills Company, upon the common counts, including " work, labor, and materials," and upon an account annexed, the principal item of which (being the main part of the plaintiffs' claim) was,—" To 66 days' work selves and four horses, $241.15." Plea, the general issue, and a set-off of charges for a pair of moccasins, a horse-brush, ten pounds steel, a set of sled-runners and sled-shoes, and for keeping four horses four nights, and fourteen meals,—amounting in all to $24.19.

The evidence for the plaintiffs tended to show that the verbal contract between the parties was,—That the plaintiffs should go into the logging-camp and work for the defendants, furnishing two pairs of horses, two sleds, and the necessary harnesses and chains; that the defendants were to furnish all needful supplies and food for the horses, to keep them shod, and to keep the sleds in repair ; that the defendants were to pay for the plaintiffs' time and expenses one way, either in going to or returning from the camp, and to pay the plaintiffs for their labor and materials at the rate of $50 per month for one pair of horses, and $45 per month for the other pair ; and that it was expressly agreed that the plaintiffs might work so long, and only so long, as they pleased, and that they should be required to leave the work whenever notified by the defendants. The evidence on the part of the defendants tended to show that the contract as to the price of labor, supply of material by the plaintiffs, and of repairs for the sleds and food for the animals by the defendants, was verbal, and was substantially the same as was claimed by the plaintiffs ; that it was also verbally agreed that the defendants should pay for the plaintiffs' time and expenses in going to, but not returning from the camp ; but that the plaintiffs engaged to work through the logging season of the winter and spring of 1869, '70, and were not at liberty to leave the work at their own option ;—and, in support of this claim, they introduced a memorandum made by one of the defendants at the time of the making of the contract,

which was as follows :—" Milton and Frank Blodgett will work this winter and spring, with one pair of heavy horses, with sleds and chains and fixings suitable to haul logs, for $50, and one pair of horses with fixings as above, for $45 per month." This memorandum was written by the witness in his diary, and was not signed. The witness who made it (Lewis Brown, one of the defendants) testified that at the close of the conversation he read it over to the plaintiff, Milton Blodgett (with whom on behalf of the plaintiffs the contract was made), and that he assented to it, saying " he would be ready to work when I sent for him. Don't think he said anything more." The plaintiff, Milton Blodgett, and other witnesses present at the time, testified that when Brown read the memorandum to him, Blodgett said it was " well enough as far as it went."

The plaintiffs shortly after went on to the work, and, having worked a little more than two months, became dissatisfied and left, alleging as a reason the failure of the defendants to fulfil that portion of the contract relating to the furnishing of sufficient supplies by them. The defendants offered evidence tending to show that they were damaged by the plaintiffs' leaving the work to an extent equal to the contract price of the labor done, which evidence the court excluded as being inadmissible under these pleadings ; and the defendants excepted.

The defendants requested the court to charge the jury, " that the memorandum contains a provision as to the term of service, and that being assented to, the presumption is that it contains the whole of the contract in that particular ; and the qualification, ' so far as it goes,' would be presumed to apply to the other branches of the contract about which there is nothing said in the memorandum." The court declined thus to charge the jury, but instructed them that they might consider the memorandum in connection with all the other evidence in the case, and find what was the mutual understanding of the parties with regard to the term of service ; that, the whole of the contract not being expressed in the memorandum, but various essential and admitted elements of the contract being unexpressed therein, the jury were at liberty to find whether or not, if the plaintiffs assented to the memorandum by saying it was " well enough as far as it went," they engaged to work through the logging season ; that, if they did engage to work through the season, they could not recover in this action (which was brought before the logging season expired), nor, if they claimed the defendants' failure to furnish sufficient supplies to be an excuse for a breach of their own contract to work through the logging season, could they recover at all under the present declaration ; that, if the defendants' position be sustained, the plaintiffs cannot recover, but if the contract was as the plaintiffs claim it to have been, they may recover ; and in such case, the defendants can make no deduction from the plaintiffs' wages for damage occasioned by the plaintiffs' leaving the work, because they had a right to leave when they pleased ; and if the defendants' version of the contract be sustained, still they cannot recover, by way of set-off or in reduction of the plaintiffs' claim,

because, in the first place, the plaintiffs cannot recover at all upon their declaration, and, in the second place, the defendants cannot recover damages under the general issue and set-off in this case.

To these instructions, and the refusal of the court to give the instructions requested, the defendants excepted.

Verdict for the plaintiffs, which the defendants moved to set aside. The case was reserved.

*Aldrich, Burke, Shurtleff,* and *C. P. Sanborn,* for the plaintiffs.

*Fletcher & Heywood, Bingham,* and *Ossian Ray,* for the defendants.

LADD, J.  The first exception was to the exclusion of evidence tending to show that the defendants were damaged by the plaintiffs' leaving the work to an extent equal to the contract price of the labor done.  To ascertain whether this ruling was right, it is necessary to see what was the exact position of the case, and what was the question for the jury on the writ and pleadings as they stood. ,

The suit was commenced before the logging season expired.  It was therefore apparent that, unless the plaintiffs could satisfy the jury that the contract was as they claimed, and not for service during the whole logging season as claimed by the defendants, they must fail, for the reason that in such case the action would have been prematurely brought.  No other legal conclusion was possible if that fact were found against them.  *Thompson* v. *Phelan,* 22 N. H. 339 ; *Davis* v. *Barrington,* 30 N. H. 517, 530 ; *Hartwell* v. *Jewett,* 9 N. H. 249 ; *Bailey* v. *Woods,* 17 N. H. 365.  On the other hand, if the contract was found by the jury to be as claimed by the plaintiffs, that is, that they might work so long, and so long only, as they pleased, the defendants would be entitled to no deduction, for the very obvious reason that then there would be no fault or breach of contract by the plaintiffs, their right to leave as they did being expressly allowed by the terms of the agreement under which the labor was performed.

The question, therefore, how much the defendants were damaged by the plaintiffs' leaving when they did, was not in the case, and could not have been tried without leading to a very manifest absurdity ; for, suppose that question had been sent to the jury, and the jury had thereupon found the defendants' damages on account of the leaving to be $200, while at the same time they found that the plaintiffs were entitled to be paid $250 for their labor : deducting the one sum from the other, it would follow that they must return a verdict for the plaintiffs for $50.  This clearly involves the inconsistency of finding the contract to be as claimed by both plaintiffs and defendants at the same time, when those claims are utterly incompatible and repugnant. We are clearly of opinion that the evidence offered on this point was not admissible, and was properly excluded.

The defendants complain of the instructions given to the jury, prin-

cipally, as it seems, because the jury were told that if the defendants' version of the contract be sustained they cannot recover by way of set-off or in reduction of the plaintiffs' claim ; because, in the first place, the plaintiffs cannot recover at all upon their declaration, and, in the second place, the defendants cannot recover damages under the general issue and set-off in this case.

If this instruction had been entirely wrong, and both the reasons given for it entirely erroneous, it is not easy to see how the defendants could have been injured by it, or what ground it would furnish for setting aside the verdict; for the jury did not find the defendants' version of the contract to be sustained ;—what would have happened, or what their verdict must have been in case they had so found, was of no consequence. They never had occasion to apply the rule laid down for their guidance in such a contingency, because the contingency never arose. Whether a rule is right or wrong can hardly be very material, when it is certain that it has not been used.

This would seem to be a sufficient answer to the objection, even if the instruction on this point was wrong : but we think it was right. It is sufficiently settled in this State, that where the defendant, in a case like the present, elects to have the damages which he has suffered from the plaintiff's breach of contract under which the service was performed, considered and allowed in the action brought against him to recover pay for such service, he must be understood as conceding that they are not to be extended beyond the amount of what he has received. *Britton* v. *Turner*, 6 N. H. 481. The doctrine is clearly stated by BRONSON, J., in *Batterman* v. *Pierce*, 3 Hill 171. He says,— " The defendant has the election whether he will set up his claim in answer to the plaintiff's demand, or resort to a cross action ; and, whatever may be the amount of his damages, he can only set them up by way of abatement, either in whole or in part, of the plaintiff's demand. He cannot, as in case of set-off, go beyond that and have a balance certified in his favor."

And see an elaborate and valuable discussion of the whole subject by MARTIN, J., in *Ward* v. *Fellers*, 3 Mich. 281. A different practice prevails under those systems of pleading which authorize the court, in any action which requires it, to grant the defendant affirmative relief. But where the common law rules of pleading are in use, and the defendant is allowed to recoup his damages by way of defence only, he can do no more than reduce, or, at most, wholly cancel and defeat, the plaintiff's claim.

If the defendant thinks his damages are more than the plaintiff's whole demand, his proper course is to waive that defence and bring a cross action to recover them. *Merriam* v. *Woodcock*, 104 Mass. 326. The instruction complained of amounts to no more than this : If the plaintiffs, by reason of their own breach of the contract, are not entitled to recover at all in this suit, which was commenced before the end of the logging season, then the defendants cannot have the damages they have suffered, by reason of the breach, deducted or recouped

from the plaintiffs' damages; and the reason is quite obvious, that in such case the plaintiffs would have no damages to be reduced, and an independent judgment for damages in favor of the defendants could not be rendered on the pleadings as they stood. The instruction was therefore right, and one, at least, of the reasons given for it was correct. Whether the other reason, namely, that the defendants cannot recover damages under the general issue and set-off, was correct or not would therefore be immaterial, even if the correctness of the instruction were material. A wrong reason given for a right ruling, when it appears that the jury were not misled thereby, furnishes no ground of exception. *Gibson* v. *Stevens*, 7 N. H. 352, 360; *Carpenter* v. *Pierce*, 13 N. H. 403. To avoid any misapprehension, however, it may be well to add a few observations on this point.

Instructions to the jury are to be considered with reference to the facts and situation of the case in which they are given. In this case we have seen that the defendants could not recoup their damages, whichever way the jury found the contract; for in one event the plaintiffs were entitled to recover without reduction, and in the other, there would be nothing from which the defendants' damages could be deducted;—to say, therefore, that the defendants could not recover damages under the general issue, really added nothing to what had been already said, or to the plain law governing the case. Whether, in a case where the damage suffered by the defendant by reason of the plaintiff's failure to fully perform the contract on his part is relied on as a defence *pro tanto*, the facts upon which the defendant's right to the deduction depends can be shown under the general issue, has not, perhaps, been raised and settled by a distinct adjudication in this State, while in other jurisdictions the cases seem to be somewhat conflicting. For example: in *Runyan* v. *Nichols*, 11 Johns. 547, which was an action by an attorney for his fees, it was held that the defendant could not show negligence of the attorney in conducting the business as a defence under the general issue; and VAN NESS, J., in delivering the judgment of the court, says,—" In such a case as this, it is peculiarly fit and proper that the plaintiff should be apprised that such a defence as this was intended to be insisted on." And he further remarks, that " to allow the reputation of an attorney to be assailed by a defence involving such serious consequences, without any previous notice, would, I think, be unreasonably and unnecessarily harsh and rigorous." But in *Hill* v. *Allen*, 2 M. & W. 283, it was held that a special plea to an attorney's bill, which sets up as a defence that the plaintiff conducted the business so negligently and unskilfully as to be useless to the defendant, is bad on special demurrer, as amounting to the general issue; and in *Grounsell* v. *Lamb*, 1 M. & W. 352, which was assumpsit for a cutting machine sold and delivered, it was held that the defendant might show, under the general issue, that the machine was manufactured by the plaintiff for the defendant under a condition that if it did not work nothing should be paid for it; that it could not be made to work, and that it was useless to the defendant;—

see, also, to the same effect, *Cousins* v. *Paddon*, 2 C. M. & R. 547 ; *Jones* v. *Nanney*, 1 M. & W. 333 ; *Jones* v. *Reade*, 1 N. & P. 18 ;—and again, in New York, in *Hopping* v. *Quin*, 12 Wend. 517, it was held, without reference to the question of notice, that an attorney could not recover in an action of assumpsit for his fees where the suit which he had been retained to bring had been so negligently managed that his services were worth nothing. But these cases are generally put upon the ground that the plaintiff's breach of his contract, which the defendant sets up to defeat the claim, is of such a character that it goes to the whole consideration ; in other words, that the service, being improperly performed, is not at all the thing contracted for, and therefore furnishes no ground of action.

Where the defence shows only a partial failure of consideration, a different rule has been applied. The *People* v. *Niagara*, C. P., 12 Wend. 246 ; *Burton* v. *Stewart*, 3 Wend. 238 ; *Reab* v. *McAlister*, 8 Wend. 109.

But the doctrine of *Britton* v. *Turner* has not been generally received in other jurisdictions ; and the rule of pleading in such cases must be settled with reference to the grounds upon which that decision is put, and the practice established by it in this State, rather than by authorities which indicate the practice where a different rule exists.

In *Britton* v. *Turner*, the plaintiff had broken his original contract, and, of course, could not recover on it at all : hence there was no question of a partial or total failure of the consideration upon which that contract stood. The court, however, held that the plaintiff's labor, received and enjoyed by the defendant from day to day, furnished a new consideration for a new contract, whereupon the law would raise a promise to pay what the services were worth over and above the damage occasioned by the plaintiff's breach of the original agreement. The plaintiff's position in this class of cases is, that upon such new consideration he is entitled to recover such portion of the actual value of his services as may be left after deducting the defendant's damage occasioned by the breach. A special count, setting forth accurately and fully the ground of the defendant's liability on the new contract, would show a promise by him, in consideration of services rendered (the benefit of which he has enjoyed, and cannot reject), to pay, not what such services are worth, but only what remains of their value after deducting the damage resulting from the plaintiff's breach of the original contract. *Page* v. *Marsh*, 30 N. H. 305 ; *Horn* v. *Batchelder*, 41 N. H. 86 ; *Smith* v. *Newcastle*, 48 N. H. 70.

If this be so, there would seem to be no reason for requiring this defence to be specially pleaded. It is quite significant, also, that none of our cases, where the doctrine of *Britton* v. *Turner* has been recognized and reäffirmed, show that notice of the defence was given, by plea or otherwise ; while in *Elliott* v. *Heath*, 14 N. H. 131, it appears that the defence was received under the general issue. Such has probably been the usual practice in this State, and we are disposed to think it is well enough. The question, however, is not involved in the deci-

sion of this case, for the reasons given ; and these observations have been made,⋅to prevent any misapprehension that might arise from the form in which the instructions to the jury were put.

The memorandum introduced by the defendants was not a written contract : it was not signed by the parties. If, however, it was agreed to by the plaintiffs as containing the whole contract, without any condition or qualification, it would be extremely good evidence of what the contract was. Whether there was such assent, or whether the assent was qualified or limited, and, if so, in what way, were purely questions of fact for the jury. There was no legal presumption that the words " well enough as far as it went " had reference to one any more than another of the matters embraced in the parol contract just concluded. It was clearly for the jury to say, upon the whole evidence, what the understanding or contract of the parties was. We think the instructions on this point were entirely correct.

*Judgment on the verdict.*