O’Toole, J.
The plaintiff, Keizo Nonaka (“Nonaka”), brings this action alleging unfair and deceptive practices by the defendant, Merrimack Mutual Fire Insurance Company (“Merrimack”), under the authority of G.L.c. 93A, §§2 and 9, and G.L.c. 176D, §3(9). Merrimack has simultaneously filed a motion for summary judgment as to Nonaka, individually and as assignee of Merrimack’s insured, and a motion to dismiss as to Nonaka, individually. For the reasons set forth below, Merrimack’s motion to dismiss is denied and Merrimack’s motion for summary judgment is denied in part and allowed in part.
BACKGROUND
On June 11, 1990, during an argument in front of the residence of Anthony J. D’Urso in Medford, Massachusetts, D’Urso fired a twelve-gauge shotgun at Nonaka, seriously wounding him. On July 30, 1990, Nonaka filed a tort action against D’Urso alleging negligence.[1] Nonaka v. D’Urso, DN 90-5227-B (the “tort action”). D’Urso retained private counsel, Mark O’Connor, to defend him in the tort action. O’Connor discovered that D’Urso was insured under a Merrimack homeowner’s insurance policy, and notified Merrimack of the Nonaka suit in September 1990. In late September, Merrimack assumed the defense and retained Paul L. Cummings, Esq., to represent D’Urso; O’Connor withdrew his appearance.
On November 19, 1990, Nonaka amended his complaint to allege assault and battery and intentional infliction of emotional distress in addition to the negligence counts against D’Urso. On January 19, 1991, Nonaka filed a second amended complaint deleting the intentional torts added by the first amended complaint, and alleging only negligence against D’Urso.
Merrimack did not formally disclaim or reserve its right to disclaim coverage for Nonaka’s injuries, but on March 11, 1991, Merrimack commenced an action seeking declaratory judgment that its homeowner’s insurance policy issued to D’Urso did not provide coverage for the shooting of Nonaka because it was an intentional tort. Nonaka and D’Urso were co-defendants in that action. Merrimack Mutual Ins. Co. v. Nonaka et al, DN 91-1588-B (“the declaratory judgment action”). Shortly after the commencement of that suit, D’Urso requested that a private attorney, Robert Bonsignore, represent him in the tort action. Merrimack accordingly relinquished control of the tort case to Bonsignore. (Merrimack agreed to pay Bonsignore’s fee.) On March 23, 1991, Nonaka sent Merrimack a demand letter pursuant to G.L.c. 93A and G.L.c. 176D, demanding settlement in the amount of $500,000.00, the policy limit.
Both the tort and the declaratory judgment action were tried in May 1991. A jury in the tort action (to which Nonaka and D’Urso, but not Merrimack, were parties) awarded Nonaka $990,306.00 in damages. In the declaratory judgment action (among Nonaka, D’Urso, and Merrimack), a jury found, in answer to a special question, that D’Urso had intentionally wounded Nonaka. The judge presiding over the trial of that action concluded that although the policy would not ordinarily cover such intentional acts, Merrimack must nonetheless provide coverage for the judgment because it had improperly delayed in disclaiming coverage. The judge specifically found that D’Urso had not been actually prejudiced by the delay, but he concluded that even so Merrimack had, by reason of the delay, forfeited its right to deny coverage. Merrimack appealed.
Subsequently, with the appeal pending, Nonaka sent Merrimack further demand letters under G.L.c. 93A, seeking payment. Merrimack responded, seasonably rejecting Nonaka’s demands.
In September 1991, Nonaka, both individually and as assignee of D’Urso, filed this action against Merrimack, alleging that Merrimack had committed unfair insurance practices by exercising control over the defense of the tort action without formally reserving its rights (Count I, II, and III), failing to make a reasonable settlement offer (Count IV), and failing to respond appropriately to demand letters (Counts V and VI).
Meanwhile, ■ the Supreme Judicial Court granted Merrimack’s application for direct appellate review of the declaratory judgment action, and on January 19, 1993, the Court vacated the judgment of the Superior Court and ordered entry of a declaratory judgment that Merrimack did not owe an obligation under its homeowner’s policy to D’Urso with respect to the claims arising out of the June 11, 1990 shooting incident. Merrimack v. Nonaka, 414 Mass. 187 (1993).
DISCUSSION
The present complaint alleges that in various respects Merrimack has acted in violation of the requirement that it observe fair insurance practices set out in G.L.c. 176D, §3(9). That statute itself provides no private remedy for any violation; rather, it is a regulatory statute enforceable by the commissioner of insurance. Dodd v. Commercial Union Insurance Co., 373 Mass. 72, 75-78 (1977); Mahaney v. John Hancock Life Insurance Co., 6 Mass.App.Ct. 919, 921 (1978) (re-script). However, G.L.c. 93A, §9 provides a private remedy to “any person whose rights are affected by another person violating the provisions of clause (9) of section three of chapter one hundred and seventy-six D may bring an action in superior court . . .” G.L.c. 93A §9(1), clause added by St. 1979, c. 406, §1.
*529 To establish the causes of action pleaded, Nonaka must establish that either he, individually, or D’Urso, his assignor, was a “person whose rights [were] affected” by Merrimack’s violation of one of the standards of conduct set out in G.L.c. 176D, §3(9).
A. NONAKA AS D’URSO’S ASSIGNEE
With respect to his assertion of rights as D’Urso’s assignee, Nonaka must establish that his rights have been affected where it has already been determined, after full litigation, that D’Urso was not prejudiced by Merrimack’s conduct. Logically, it cannot be done. A finding that D’Urso had not been prejudiced is conceptually synonymous to a conclusion that his rights were not affected. If D’Urso suffered no “prejudice,” then there could have been no effect on his “rights.” Conversely, if the conclusion from the prior litigation had been that he was prejudiced, it would have to be concluded that his rights were affected.
It does not matter that this issue was previously litigated in the context of a different cause of action. The doctrine of “issue preclusion,” as distinguished from “claim preclusion,” concerns the collateral effect to be given to subsidiary issues that have been actually considered and decided before, even though in a different litigation context. What is required is that the parly against whom the doctrine is invoked has had, in the prior litigation, a full and fair opportunity to try out the issue, that the issue has in fact been fully litigated, and that the determination of the issue was essential to the decision in the prior case. Martin v. Ring, 401 Mass. 59, 61 (1987); Restatement (Second), Judgments, §27 (1982).
Those three conditions are met here. D’Urso and Nonaka both had the full opportunity to litigate the issue of prejudice to D’Urso in the declaratory judgment action, and it was in fact litigated. The existence of such prejudice or not was an issue essential to the outcome of the action. The full litigation of that issue to the conclusion that D’Urso was not prejudiced by logical necessity amounted also to the litigation of the conceptually synonymous conclusion that his rights were not affected, even though the issue was not framed in that language in the declaratory judgment action.
If D’Urso’s rights were not affected, then Nonaka’s rights as he is D’Urso’s assignee cannot have been affected. For that reason, Merrimack’s motion for summary judgment as to Nonaka as assignee is allowed.
B. NONAKA, INDIVIDUALLY
Nonaka contends that he considered settling with D’Urso when it became possible that D’Urso’s acts might be deemed intentional and thus excluded from coverage under Merrimack’s policy. Nonaka further contends that he would have pursued settlement with D’Urso at an earlier stage “in order to obtain some money to help pay his medical bills!,]” If he had known that Merrimack would eventually disclaim coverage altogether.
For the purposes of Merrimack’s motions to dismiss and for summary judgment as to Nonaka, individually, such an inquiry as to whether Merrimack’s conduct affected Nonaka’s behavior presents a genuine issue of material fact to be resolved by a factfinder. See Noyes v. Quincy Mutual Fire Ins. Co., 7 Mass.App.Ct. 723, 726 (1979) (“[resolution of the basic dispute [whether the insurer’s conduct violated G.L.c. 93A or 176D] under the circumstances of his case depends upon a factual determination of the (the insurer’s) knowledge and intent”); see also, DiMarzo v. American Mutual Insurance Co., 389 Mass. 85, 96-97 (1983) (in suit brought by third-party claimant against insurer “it was for the trier of fact to determine if the [insurer’s] conduct was an unfair or deceptive act or practice”). Under these circumstances, where Nonaka claims to have incurred significant legal costs, and where settlement might have avoided those costs, Nonaka, individually, has stated a claim for which relief may be granted and as to which there exists a genuine issue of material fact.
CONCLUSION
The defendant’s motion to dismiss is DENIED.
The defendant’s motion for summary judgment is DENIED as to the plaintiff, individually, and ALLOWED as to the plaintiff, as assignee.

 Specifically, Nonaka alleged against D’Urso negligent handling of a loaded shotgun, negligent infliction of emotional distress, and negligence in failure to render and summon aid.